UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RAMON SANTIAGO | : | CRIMINAL No. 3:02CR295(EBB) |
| V. | : | CIVIL No. 3:04CV1700(EBB) |
| UNITED STATES OF AMERICA | : | May 18, 2005 |

GOVERNMENT'S RESPONSE TO ROQUE'S PETITION UNDER 28 USC § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The Government submits the following response to defendant-petitioner Ramon Santiago's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The petitioner was sentenced to 96 months' incarceration and 3 years' supervised release after pleading guilty to Count One of the Indictment, which charged him with being a previously convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The petitioner filed a notice of appeal, but defense counsel, in support of his motion to withdraw as appellate counsel, submitted an Anders[1] brief indicating that there were no non-frivolous issues to raise on appeal. The Government filed a motion for summary affirmance in light of the Anders brief. The Court granted defense counsel's motion to withdraw and dismissed the appeal.

The defendant now moves on collateral review to vacate his sentence. He asserts a claim of ineffective assistance of counsel and argues, within that claim, that his sentence violated his Fifth and Sixth Amendment Rights, as those rights are set forth in Blakely v. Washington, 124 S. Ct. 2531 (2004). For the reasons stated below, the petitioner's motion is without merit and should be denied.

---

[1] Anders v. California, 386 U.S. 738 (1967).

**I.    FACTS**

The petitioner was indicted on October 16, 2002 for one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Specifically, Count One of the Indictment charged:

> On or about April 3, 2002, at Bridgeport, in the District of Connecticut, **RAMON SANTIAGO**, the defendant herein, having been convicted in the Superior Court of the State of Connecticut of crimes punishable by imprisonment for a term exceeding one year, that is: 1) Sale of Narcotics, in violation of Conn. Gen. Stat. § 21a-277(a), on June 28, 1995; and 2) First Degree Larceny, in violation of Conn. Gen. Stat. § 53a-122, on August 12, 1994, did knowingly possess a firearm in and affecting commerce, that is, a Star, .45 caliber semi-automatic handgun, Serial Number 1813424, which had been transported in interstate or foreign commerce.

The petitioner was arraigned on December 17, 2002, and he pleaded not guilty. Jury selection was set for December 10, 2002.

On December 6, 2002, the petitioner changed his plea to guilty as to Count One. The Court engaged the petitioner in a lengthy plea canvass in compliance with Fed. R. Crim. P. 11, which included a review of the specific provisions of the written plea agreement in which the petitioner and the Government had entered. The Government indicated that, if the case had proceeded to trial, it would have established through the testimony of witnesses and the presentation of exhibits that, on April 3, 2002, the defendant had brandished a Star .45 caliber handgun that had been manufactured in Spain and that the defendant had accosted three individuals on Wordin Avenue in Bridgeport, Connecticut. Specifically, the defendant had threatened one of those individuals with the gun, had taken three dollars from him, and, before leaving in his car, had promised to return. Shortly thereafter, the police arrived and were directed by the victims to the suspect's car, which had circled back around the block. The police followed the car, stopped it, chased an unidentified passenger who fled the scene and successfully evaded capture, detained the defendant, and eventually removed

him from the driver's seat of the vehicle. In the course of removing him from the vehicle, the officers located a loaded, Star handgun underneath him on the driver's seat. Prior to that date, the defendant had been convicted of several felony offenses in Connecticut. The Court addressed the defendant regarding the government's factual basis, and the defendant agreed that he had knowingly possessed the subject firearm on April 3, 2002, but contended that, when he had returned to Wordin Avenue, he had been alone in the car.

The Pre-Sentence Report ("PSR") placed the defendant at a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2), by virtue of his June 28, 1995 felony conviction for sale of narcotics and his November 8, 1993 felony conviction for third degree robbery. See PSR at ¶ 12. The PSR recommended a four level enhancement under § 2K2.1(b)(5) because the firearm at issue had been possessed in connection with another felony offense, i.e., first degree robbery. See PSR at ¶ 13. The defendant qualified for a three level reduction for acceptance of responsibility. See id. ¶ 18; U.S.S.G. § 3E1.1. Accordingly, the PSR determined the total offense level as 25. As to the criminal history category, the PSR calculated that the defendant had accumulated eighteen points over his criminal career. See PSR at ¶ 28. Thus, the defendant fell into criminal history category VI, resulting in an effective sentencing guideline range of 110-120 months' incarceration.[2]

The defendant filed a sentencing memorandum challenging the application of the four level enhancement under U.S.S.G. § 2K2.1(b)(5) for use of the firearm in connection with another felony offense. The defendant argued that (1) the court should apply a clear and convincing standard of proof to its factual determinations at sentencing, rather than a preponderance of the evidence standard, and (2) the defendant's intoxication at the time of the offense mitigated against a finding

---

[2]The actual guideline range was 110-137 months; however, the statutory maximum penalty for the offense under 18 U.S.C. § 924(a)(2) is 120 months' incarceration.

that the firearm was possessed in connection with a first degree robbery offense. The defendant made mention of the fact that his sentence was subject to "enhancements" due to his prior felony convictions for sale of narcotics and third degree robbery, but did not argue that the PSR's offense level determination under U.S.S.G. § 2K2.1(a)(2) was incorrect or that such convictions did not, in fact, exist. Rather, he focused his argument on the § 2K2.1(b)(5) enhancement, specifically requested that the court not apply the four level increase and asked for a sentence at an offense level of 21 and a guideline range of 77-96 months. He also, in one paragraph, requested consideration for, among other things, his "demonstrated 'super' acceptance of responsibility."

At the sentencing hearing on February 20, 2003, the defendant relied entirely on this second argument and requested, under U.S.S.G. § 5K2.0, that, based on all the combination of circumstances discussed, the court depart downward four levels and sentence him in a guideline range of 77 to 96 months' incarceration. The Court found that the PSR correctly determined the offense level to be 25 and the criminal history category to be VI, for a resulting range of 110-120 months. The Court further decided to depart downward four levels to level 21 based on the defendant's prompt acceptance of responsibility in state and federal court for the totality of his actions on April 3, 2002. The Court stated that it "was prepared to accept the defense argument that a downward departure is appropriate." The court then sentenced the defendant to 96 months' incarceration, three years' supervised release, and a $100 special assessment.

The defendant filed a notice of appeal on February 26, 2003. On May 7, 2003, the defendant's counsel filed a motion for leave to withdraw as counsel pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967) and a brief arguing that there were no non-frivolous grounds to attack the sentence in this case. Defense counsel served the defendant with copies of both the motion and the brief, as required by Fed. R. App. P. The defendant did not file any motion or petition requesting

replacement counsel. On May 29, 2003, the Government responded to defense counsel's <u>Anders</u> brief by filing a motion and memorandum in support of defense counsel's argument that, indeed, there were no non-frivolous grounds on which to base an appeal of the defendant's sentence. In that memorandum, the Government, <u>inter alia</u>, specifically reviewed the plea canvass and argued that it had complied with the requirements of Rule 11. On May 30, 2003, the petitioner filed a <u>pro se</u> motion for the appointment of new appellate CJA counsel. On October 7, 2003, the Second Circuit granted defense counsel's motion to withdraw as counsel, denied the petitioner's motion for the appointment of CJA counsel, and granted the Government's motion for summary affirmance. On October 23, 2003, the petitioner filed a <u>pro se</u> motion to reinstate his appeal rights and for the appointment new appellate counsel. On November 17, 2003, the Second Circuit denied both of these motions.

On October 8, 2004, the petitioner filed his petition for relief under § 2255. In short, the petitioner relied on <u>Blakely v. Washington</u> and claimed that the Court's sentence in this case violated his Fifth and Sixth Amendment rights guaranteed under the Constitution because it was based on facts not found by a jury under the reasonable doubt standard. The Court initially sent the petitioner and the Government a letter noting that the petitioner had raised claims under <u>Blakely</u> and indicating that it would defer ruling on the § 2255 motion until it had received further guidance from the Supreme Court as to the scope of <u>Blakely</u>. On April 26, 2005, the Court ordered the Government to show cause on or before May 24, 2005 why the relief requested in the § 2255 motion should not be granted.

## II. **DISCUSSION**

### A. **Governing Legal Principles**

The principles governing a claim under 28 U.S.C. § 2255 are well-established: "[W]e must

bear in mind that not 'every asserted error of law can be raised on a § 2255 motion.'" Napoli v. United States, 32 F.3d 31, 35 (2d Cir. 1994) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)). "The grounds provided in section 2255 for collateral attack on a final judgment in a federal criminal case are narrowly limited, and it has 'long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'" Napoli, 32 F.3d at 35 (quoting United States v. Addonizio, 442 U.S. 178, 184 (1979)). "As a general rule, 'relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Napoli, 32 F.3d at 35 (quoting Hardy v. United States, 878 F.2d 94, 97 (2d Cir. 1989)) (internal quotations and citations omitted). Constitutional errors will not be corrected through a writ of habeas corpus unless they have had a "substantial and injurious effect," that is, unless they have resulted in "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 623, 637-38 (1993); see also Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht to section 2255 petition).

Furthermore, a habeas petitioner must not have procedurally defaulted his claims by failing to raise them at trial and on direct appeal. For a court to review procedurally defaulted claims, the petitioner must show both "cause" for the default of each claim and "prejudice" that resulted from the alleged violation. See Ciak v. United States, 59 F.3d 296, 302 (2d Cir. 1995) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). A writ of habeas corpus will not be allowed to do service for an appeal. See Reed v. Farley, 512 U.S. 339, 354 (1994) ("Where the petitioner–whether a state or federal prisoner–failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged . . . violation.'") (quoting Wainwright, 433 U.S. at 84); Douglas v. United States, 13 F.3d 43, 46 (2d

-6-

Cir. 1993) (same).

The rule of procedural default can be overcome in a habeas case only in narrow circumstances. One such circumstance is where the petitioner shows that his counsel's performance was constitutionally ineffective. See Murray v. Carrier, 477 U.S. 478, 487-88 (1986). "To evaluate a claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel, [courts] use the familiar framework established in Strickland v. Washington, 466 U.S. 668 (1984)." United States v. Hernandez, 242 F.3d 110, 112 (2d Cir. 2001) (parallel citations omitted).

"A defendant must first establish that 'counsel's representation fell below an objective standard of reasonableness.'" Id. (quoting Strickland, 466 U.S. at 688). With respect to guilty pleas, the Second Circuit has held that the ABA guidelines simply require "[a] defense lawyer in a criminal case . . . to advise his client fully on whether a particular plea to a charge appears to be desirable." Boria v. Keane, 99 F.3d 492, 496 (2d Cir. 1996) (quoting Model Code of Professional Responsibility, Ethical Consideration 7-7 (1992)) (emphasis deleted). "[C]ounsel must communicate to the defendant the terms of the plea offer and should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000) (citations omitted). Not every mistake or omission of defense counsel amounts to a violation of the Sixth Amendment right to counsel. Rather, the defendant bears the burden of rebutting the strong presumption that an attorney's performance falls within the "'wide range of reasonable professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 688). The presumption in favor of counsel's effectiveness is especially strong in the context of guilty pleas where, as here, the petitioner has openly admitted his guilt before the Court. See Hill v. Lockhart, 474 U.S. 52, 58 (1985).

"Second, the defendant must show that 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Hernandez, 242 F.3d at 112 (quoting Lockhart, 474 U.S. at 59); cf. United States v. Dominguez-Benitez, 124 S. Ct. 2333, 2339 (2004) (adopting same standard for evaluating prejudice as to claimed Rule 11 violations). "This second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Lockhart, 474 U.S. at 59.

In the end, habeas relief is an extraordinary remedy that should only be granted where it is necessary to redress errors which, were they left intact, would "inherently result in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). The strictness of this standard embodies the recognition that collateral attack upon criminal convictions is "in tension with society's strong interest in [their] finality." Ciak, 59 F.3d at 301.

### B. The Petitioner's Constitutional Claim Has No Merit

The petitioner, relying on Blakely, 124 S. Ct. 2531, Ring v. Arizona, 536 U.S. 584 (2002), and Apprendi v. New Jersey, 530 U.S. 466 (2000), argues his sentence was "imposed in violation of the Fifth and Sixth Amendments to the United States Constitution. He argues that the "various enhancements" imposed by the Court at sentencing violated the principles set forth in Blakely, Ring and Apprendi. The petitioner did not raise these claims before the trial court.

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the Sentencing Guidelines violated the Sixth Amendment to the Constitution because such guidelines allowed a maximum sentence authorized by a guilty plea or verdict to increase based on factual findings (other than the proof of a prior conviction) made by a court under the preponderance of the evidence standard. See id. at 755-56. To remedy this constitutional violation, the Court held that

the Sentencing Guidelines would no longer be mandatory, binding rules for the trial court, but would be advisory, to be considered as part of a whole host of sentencing factors. See id. at 756-57. The Court expressly held that its decision applied to all cases pending on direct review. See id. The Court did not address whether its holding applied retroactively to cases on collateral review. See id.

The Second Circuit recently joined several other courts in holding that Booker does not apply to cases on collateral review. See Guzman v. United States, 404 F.3d 139, 141 (2d Cir. 2005); see also Humphress v. United States, 398 F.3d 855, 860 (6th Cir. 2005); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); United States v. Price, 400 F.3d 844, 845 (10th Cir. 2005); Varela v. United States, 400 F.3d 864, 868 (11th Cir. 2005). In Guzman, the Court reasoned that, under the analysis set forth in Teague v. Lane, 489 U.S. 288 (1989) (plurality opinion), the decision in Booker did not establish a substantive rule or a watershed rule of procedure. See Guzman, 404 F.3d at 143 (holding that Booker did not establish a watershed rule because "the only change is the degree of flexibility judges enjoy in applying the guideline system.") (internal ellipses and brackets omitted). Relying on the Supreme Court's statement in Schriro v. Summerlin, 124 S. Ct. 2519, 2525 (2004) (holding that Ring did not apply to cases on collateral review) that "we cannot confidently say that judicial factfinding seriously diminishes accuracy," the Second Circuit explained:

> The procedural defect identified in Booker is that sentence-enhancing factors were found by judges rather than by juries, and by a preponderance rather than beyond a reasonable doubt; but the remedy--to render the Guidelines advisory--vested greater discretion in judges, not less. . . . [T]he chief goal of the mandatory Guidelines project was to reduce the 'disparity and inherent unfairness' caused by discretionary sentencing. . . . We cannot say that the Guidelines actually advanced that goal, and mitigated unwarranted disparity and unfairness. By the same token, we cannot assume that the mandatory Guidelines system under which Guzman was sentenced seriously diminished the accuracy or fundamental fairness of the sentencing process. In sum, the rule established by Booker 'has none of the primacy and centrality of the rule adopted in Gideon or other rules which may be thought to be within the exception.'

Guzman, 404 F.3d at 143-44.

The Second Circuit's holding in Guzman appears to undermine the petitioner's claim in his § 2255 petition, in that it establishes that the principles set forth in Booker and its progeny do not apply retroactively to cases on collateral review.

To the extent that the petitioner is not asserting a claim directly under Blakely and Booker, but instead is arguing that his trial and appellate counsel was ineffective for failing to raise the constitutional argument he now raises on collateral review, his claim likewise fails. First, at the time of the petitioner's sentencing, the constitutionality of the Sentencing Guidelines had not been challenged under the Sixth Amendment reasoning set forth in Blakely. Indeed, despite the Supreme Court's prior holding in Apprendi, the Sentencing Guidelines had not been scrutinized under the Sixth Amendment framework later adopted in Booker. The Second Circuit specifically noted this fact in Guzman: "It cannot be said that the result in Booker was apparent to 'all reasonable jurists'; in Booker itself, dissenters undertook to explain why the holding in Booker was not compelled by Apprendi or Blakely." Guzman, 404 F.3d at 142. Second, as noted above, at the petitioner's sentencing, this Court departed from the appropriate guideline range as a result of defense counsel's arguments and sentenced the defendant within a sentencing guideline range (77-96 months) which did not encompass any challenged enhancements. As noted in the Government's memorandum in support of defense counsel's Anders brief, any appellate challenge to the extent of that departure would have been frivolous. "[I]t is beyond question that [the Second Circuit] may not review a district court's determination not to grant a downward departure. . . . It follows logically, then, that neither may [the Court] review, at defendant's request, the extent of any departure the court may grant." United States v. Doe, 996 F.2d 606, 607 (2d Cir. 1993) (citations omitted).

## III.  CONCLUSION

For the foregoing reasons, the Court should dismiss the petitioner's habeas petition in its entirety.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY

_____
ROBERT M. SPECTOR
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT18082
450 Main Street
Hartford, CT  06103
Tel.: (860) 947-1101, ext. 20

CERTIFICATE OF SERVICE

      This is to certify that on May 18, 2005, a copy of the foregoing was mailed, postage prepaid, to:

Ramon Santiago, pro-se
Inmate Number 14884-014
U.S.P. Lewisburg
P.O. Box 1000
Lewisburg, PA 17837

 

ROBERT M. SPECTOR
Assistant United States Attorney